UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Harold John Schell,

Plaintiff,

v.

United States of America,

Defendant.

No. 1:20-cv-01737-KJM-EPG

ORDER

Plaintiff Harold John Schell brings this action under the Federal Tort Claims Act against the United States of America for injuries he suffered at the Silver Lake Boat Launch in the Inyo National Forest.  The United States moves to dismiss the complaint for lack of subject matter jurisdiction, or alternatively for summary judgment.  For the reasons below, the court **denies** the motion.

I.   **BACKGROUND**

The following facts are undisputed and supported by the record unless otherwise noted.

A.   **The Silver Lake Boat Launch**

The Inyo National Forest spans 1.9 million acres.  Mot. Reif Decl. ¶ 4, ECF No. 73-3.  The forest is divided into four districts—Mono Lake, Mammoth, White Mountain and Mount Whitney.  *Id.* ¶ 5.  The North Zone encompasses Mono Lake and Mammoth and includes Silver Lake Boat Launch.  *Id.* ¶¶ 4–5, 21.  At all relevant times, Silver Lake Boat Launch was open to

1    the public.  *Id.* ¶ 22; Schell Dep. 99:7–16.[1]  The Forest Service did not charge a fee for

2    permission to enter the site, nor did it expressly invite any persons to come to the area.  Mot. Reif

3    Decl. ¶¶ 22–23.

4        At all the relevant times, there was only one full-time Forest Service employee for the

5    entire North Zone, the Assistant Recreation Officer.  *See id.* ¶¶ 2, 9.  In addition, the Forest

6    Service hires seasonal employees called recreation technicians (Rec Techs), who work during the

7    summer and the fall.  *Id.* ¶ 26.  The primary responsibility for Rec Techs is to empty trash and

8    clean restrooms at the recreation sites in the North Zone.  *Id.* ¶ 27.  "On an *ad hoc* basis and as

9    their workload permits, Rec Techs are expected to observe and assess any damaged property or

10   hazards or other issues of concern, and to receive complaints or comments from visitors regarding

11   the same."  *Id.* ¶ 28.  Rec Techs prioritize areas intensively used by visitors, such as picnic areas,

12   and sites that typically require an entrance fee.  *Id.* ¶ 29.  They also prioritize "imminent and

13   significant hazards at recreation sites[.]"  *Id.* ¶ 30.

14       In 2013, the Forest Service removed a damaged boarding float—the moniker used to

15   describe the concrete dock—at Silver Lake Boat Launch.  Mot. Gamino Decl. ¶¶ 8–9, ECF No.

16   73-11.  After receiving complaints from recreational users regarding the removal of the boarding

17   float, the Forest Service started working with the California Department of Boating and

18   Waterways to update and rehabilitate Silver Lake Boat Launch.  *Id.* ¶¶ 8–11.  The first phase

19   focused on replacing the boarding float, and this phase was completed in August 2017.  *Id.* ¶ 13.

20   The second phase, which was underway at the relevant times, is focused on updating and

21   rehabilitating the site, including by demolishing and replacing the existing boat ramp, building

22   vault-toilets and sidewalk, resurfacing and restriping the parking lot, and relocating the boarding

23   float.  *Id.* ¶¶ 14–17.

---

[1] Both parties have provided excerpts of plaintiff's deposition.  *See* Mot. Frueh Decl. Ex. 8, ECF No. 73-16; Opp'n Ucros Decl. Ex. 8, ECF No. 75-1.  For deposition transcripts, the court cites to the page numbers on the reporters' transcript itself and not to the page numbers automatically generated by the CM/ECF system.

1     **B.     Forest Service Manual**

2        The Forest Service Manual "contains legal authorities, objectives, policies,

3     responsibilities, instructions, and guidance needed on a continuing bases [sic] by Forest Service

4     line officers and primary staff to plan and execute assigned programs and activities." Mot. Reif

5     Decl. ¶ 10. Objectives of the Manual include: "[m]aximiz[ing] opportunities for visitors to know

6     and experience nature while engaging in outdoor recreation," developing and maintaining sites

7     "consistent with the available natural resources to provide, to the extent practicable, a safe,

8     healthful, esthetic, non-urban atmosphere," and evaluating and mitigating natural hazards "as

9     appropriate and practicable[.]" Forest Service Manual (FSM) § 2330.2, Mot. Reif Decl. Ex. 1,

10    ECF No. 73-4. Several policies guiding Forest Service employees include prioritizing "public

11    health and safety concern," considering cost efficiency, and utilizing risk management assessment

12    to make informed decisions. *Id.* § 2330.3. Other policies include: "[l]imit[ing] regulation,

13    constraint[s], and supervision of recreational use to the minimum necessary for resource

14    protection, visitor satisfaction, and safety." *Id.* § 2331.03(3). In addition, in determining whether

15    to close a site, the Forest Service is directed to "[m]ake every effort to stretch funds as far as

16    possible to keep needed sites and facilities open to public use." *Id.* § 2331.5(2). As part of this

17    effort, the Forest Service should consider temporary closures, use of volunteers, and the "users'

18    health and safety and level of resource damage." *Id.* Health and safety items must be given the

19    highest priority. *Id.* § 2332.

20       In the section entitled "Public Safety," the Manual provides: "[a]ll outdoor recreation

21    activities on National Forest System (NFS) lands . . . have inherent risks due to the natural setting

22    in which they occur." *Id.* § 2332.1. "Individuals engaging in outdoor recreational activities on

23    NFS lands assume these inherent risks." *Id.* However, the Manual provides the Forest Service

24    should, "[t]o the extent practicable, eliminate safety hazards from developed recreation sites." *Id.*

25    Also, it should "[i]nspect each public recreation site annually before the beginning of the

26    managed-use season." *Id.* "Maintain a record of the inspections and corrective actions taken with

27    a copy of the operation and maintenance plan." *Id.* And "[i]mmediately correct high-priority

28    hazards that develop or are identified during the operating season or close the site." *Id.* The

1  Manual further states "[f]orest personnel should conduct periodic risk assessment as necessary to

2  identify hazards, set priorities, allocate resources, implement action plans, and reassess

3  effectiveness or risk reduction activities as appropriate, feasible, and consistent with Forest

4  Service policy." *Id.* § 2332.11. "Based on the findings of the risk assessments, Responsible

5  Officials[2] should consider reasonable measures, within available resources, to mitigate those

6  risks." *Id.* However, "[i]in considering these measures, Responsible Officials should balance

7  public recreation and safety with management of the natural, historic, or cultural settings in a

8  manner that does not fundamentally alter that setting." *Id.* Additionally, the Manual directs the

9  Forest Service to "[m]aintain all improvements to the standard to which originally constructed or

10 subsequently improved or modified," and to "[s]chedule light or current maintenance . . . during

11 the recreation season[.]" *Id.* § 2332.5

12       **C.       The Incident**

13       On September 27, 2018, plaintiff went to Silver Lake Boat Launch to fish on the lake.

14 Schell Dep. 94:19–95:3. On his way from the lake shore to his car, plaintiff's left foot slipped on

15 a black, tarp-like material[3] between the edge of the pavement of the parking lot and a set of

16 wooden stairs; the tarp extends some distance on either side of top of the stairs. *Id.* 71:15–18,

17 73:5–13, 113:10–17; *see also* Photos, Reif Decl. Ex. 5, ECF No. 73-8 (with one photo

18 incorporated into this order below). Plaintiff's right foot then hit the pavement, causing him to

19 fall forward. *Id.* 71:18–22, 113:13–17. As he ran forward to "right" himself or "break" himself,

20 he tripped on something solid on the pavement and then hit his head on the running board of his

21 truck. *Id.* 71:15–72:4, 73:18–74:17, 75:21–76:6. Among other injuries, he broke his neck. *See,*

22 *e.g.*, *id.* 71:15–74:10. In walking up to his car, plaintiff did not use the wooden stairs; rather he

23 walked on the side of the stairs because the stairs moved and he was afraid to use them. *Id.* 69:9–

---

[2] The Manual does not define "Responsible Officers," but those with responsibility include Regional Foresters, Forest and Grassland Supervisors and District Rangers. *See* §§ 2330.4 (Responsibility), 2330.41, 2330.42, 2330.43.

[3] The parties also describe the material as "geotextile fabric." *See* Opp'n at 2, ECF No. 75; Reply at 15 n.9, ECF No. 77.

1    23, 71:6–10, 112:13–113:9.  He testified "I looked at [the set of stairs] and I knew right away that

2    the thing had not been maintained and it's a hazard." *Id.* 109:20–21.

3          The wooden stairs connect the parking lot to an area where there is a picnic table, located

4    on the right side of the stairs when facing the parking lot.  *See* Photos.  Currently employed Forest

5    Service staff do not appear to know the origins of the wooden steps or anything about their

6    maintenance schedule.  *See* Gamino Dep. 105:19–25, Mot. Frueh Decl. Ex. 11, ECF No. 73-19.



7    *See* Photos (photo of tarp, wooden stairs, pavement and picnic table).

8          Prior to plaintiff's accident, there is no evidence in the record of other personal injuries

9    occurring in this location.  *See, e.g.*, Mot. Casey Decl. ¶¶ 4–5, ECF No. 73-13 (declaring no

10   administrative claims concerned Silver Lake boat launch); Mot. Reif Decl. ¶¶ 32–35; Mot. Mason

11   Decl. ¶¶ 3–6, ECF No. 73-10; Mot. Gamino Decl. ¶¶ 24–28.  The Forest Service Public Affairs

12   Office, which "occasionally receives complaints from the public about [Forest Service] facilities,"

13   did not receive any complaints about the stairs or the area leading to the picnic table.  Gamino

1   Decl. ¶ 24; Gamino Dep. 90:20–91:16.  There is also no evidence any Forest Service employee

2   was aware of the presence of the tarp-like material.  *See, e.g.*, Mot. Reif Decl. ¶¶ 31–35; Mason

3   Decl. ¶¶ 3–6; Gamino Decl. ¶¶ 24–28.  However, the Forest Service was aware in 2016 that

4   Silver Lake Boat Facility was in "poor condition" with "many cracks with vegetation growth" in

5   the existing parking area where plaintiff was injured, which would continue to deteriorate if

6   unattended.  Project Grant Agreement at 92,[4] Opp'n Ucros Decl. Ex. 3, ECF No. 75-1.  Defendant

7   knew the "lake is popular with those seeking outdoor recreational opportunities," *id.*, and that

8   failure to repair Silver Lake Boat Launching Facility would "result in operation under a state of

9   disrepair [and] possible closure due to unsafe infrastructure," *id.* at 105.

10        **D.    Procedural History**

11        After exhausting his administrative remedies, plaintiff filed this action under the Federal

12   Torts Claims Act (FTCA) against the United States of America acting by and through the Inyo

13   National Forest Service.  *See* Compl. ¶¶ 1, 5, ECF No. 3.  Plaintiff brings the following three

14   claims: premise liability, negligence and negligent undertaking.  Compl. ¶¶ 15–29.  Discovery for

15   the liability phase has closed, *see* Order Amending Scheduling Order, ECF No. 67; Joint Status

16   Report, ECF No. 82, and defendant now moves to dismiss the case for lack of subject-matter

17   jurisdiction, or alternatively summary judgment in favor of defendant based on immunity under

18   California Civil Code section 846, Mot., ECF No. 73; Mem., ECF No. 73-1.  The motion is fully

19   briefed.  Opp'n; Reply.  The court held a hearing on the motion on July 12, 2024.  Mins. Hr'g,

20   ECF No. 92.  Alexander Wheeler appeared for plaintiff and Joseph Frueh appeared for defendant.

21   *Id.*

22   **II.    LEGAL STANDARD**

23        A motion under Federal Rule of Civil Procedure 12(b)(1) contests the court's subject

24   matter jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir.

25   2003); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-

26   matter jurisdiction, the court must dismiss the action.").  A Rule 12(b)(1) jurisdictional attack

---

[4] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

may be facial, based on the allegations in the complaint, or factual, based on extrinsic evidence

beyond the complaint. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Safe Air for Everyone*

*v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Here, defendant brings a motion to dismiss or, in

the alternative for summary judgment and raises a factual attack based on extrinsic evidence,

including deposition transcripts, to challenge the court's subject matter jurisdiction. *See* Mem. at

13.

How a court reviews a factual attack depends on whether the jurisdictional and merits

issues intertwine.  "Ordinarily, where a jurisdictional issue is separable from the merits of a case,

the court may determine jurisdiction by the standards of a Rule 12(b)(1) motion to dismiss for

lack of jurisdiction." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  In such

circumstances, a court "is not restricted to the face of the pleadings, but may review any evidence,

such as affidavits and testimony, to resolve factual disputes concerning the existence of

jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citation omitted).

The court may consider this evidence "without converting the motion to dismiss into a motion for

summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039.  The plaintiff has the burden of

establishing the court's subject matter jurisdiction. *Edison v. United States*, 822 F.3d 510, 517

(9th Cir. 2016).  While the court does not need to presume the truthfulness of the plaintiff's

allegations, the court must resolve factual disputes in the plaintiff's favor. *Id.*

However, where the jurisdictional issue and substantive claims are "so intertwined that

resolution of the jurisdictional question is dependent on factual issues going to the merits," the

district court should apply a summary judgment standard. *Autery v. United States*, 424 F.3d 944,

956 (9th Cir. 2005) (quoting *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987)).  The

court should grant the motion only if, viewing the evidence in the light most favorable to the non-

movant, the "material jurisdictional facts are not in dispute and the moving party is entitled to

prevail as a matter of law." *Rosales*, 824 F.2d at 803; *Suzuki Motor Corp. v. Consumers Union of*

*U.S., Inc.*, 330 F.3d 1110, 1131–32 (9th Cir. 2003) (en banc).

"[I]n the unique context of the FTCA, all elements of a meritorious claim are also

jurisdictional." *Brownback v. King*, 592 U.S. 209, 217 (2021).  Here, the jurisdictional issue and

1  substantive claims are intertwined such that the resolution of the jurisdictional question is

2  dependent on the factual issues.  For example, the question of whether the Forest Service knew or

3  should have known about the dangerous conditions at Silver Lake Boat Launch is directly

4  relevant to whether the discretionary function exception or immunity under the recreational use

5  statute applies.  *See Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014).  Therefore, the

6  court applies the summary judgment standard.

7  **III.   SUBJECT MATTER JURISDICTION**

8      **A.      The FTCA and Discretionary Function Exception**

9          The FTCA provides a limited waiver of sovereign immunity and permits suits against the

10  United States for damages for personal injury "caused by the negligent or wrongful act or

11  omission of any employee of the Government while acting within the scope of his office or

12  employment."  *See* 28 U.S.C. § 1346(b)(1); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531,

13  535 (1988).  The FTCA contains several exceptions to its waiver of sovereign immunity.  *See* 28

14  U.S.C. § 2680.  Relevant here, the "discretionary function" exception bars claims "based upon the

15  exercise or performance or the failure to exercise or perform a discretionary function or duty . . .

16  whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  This exception

17  "insulates certain governmental decision-making from judicial second guessing of legislative and

18  administrative decisions grounded in social, economic, and political policy through the medium

19  of an action in tort."  *Myers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011) (internal marks

20  and citations omitted).  "In other words, 'if judicial review would encroach upon th[e] type of

21  balancing done by an agency, then the [discretionary function] exception' applies."  *O'Toole v.*

22  *United States*, 295 F.3d 1029, 1033 (9th Cir. 2002) (quoting *Begay v. United States*, 768 F.2d

23  1059, 1064 (9th Cir. 1985)).

24          To determine whether the discretionary function exception applies, the Supreme Court

25  prescribes a two-part test.  *See United States v. Gaubert*, 499 U.S. 315, 322–25 (1991); *Berkovitz*,

26  486 U.S. at 536–37.  First, a court asks whether the challenged action was discretionary, meaning

27  the action involved an "element of judgment or choice."  *Gaubert*, 499 U.S. at 322 (quoting

28  *Berkovitz*, 486 U.S. at 536).  An action is not discretionary if a "federal statute, regulation, or

8

policy specifically prescribes a course of action for an employee to follow," because the employee "has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. Second, if the action was discretionary, the court determines "whether the challenged action is of the type Congress meant to protect—i.e., whether the action involves a decision susceptible to social, economic, or political policy analysis." *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) (citing *O'Toole*, 295 F.3d at 1033–34).

The discretionary function exception should be read in light of the FTCA's purpose to "compensate individuals harmed by government negligence[.]" *Terbush v. United States*, 516 F.3d 1125, 1135 (9th Cir. 2008) (quoting *O'Toole*, 295 F.3d at 1037)  "As a remedial statute, it should be construed liberally, and its exceptions should be read narrowly." *Id.* (internal quotations omitted) (quoting *O'Toole*, 295 F.3d at 1037).  Although a plaintiff bears the burden of showing the court has subject matter jurisdiction, the United States has the burden of proving one of the FTCA's exceptions to the waiver of immunity applies. *Prescott v. United States*, 973 F.2d 696, 701–02 (9th Cir. 1992).

**B.     Discussion**

In the complaint, plaintiff challenges the following: (1) defendant's failure to maintain the site where the dangerous and uneven pathway between the parking lot and lake is located and (2) defendant's failure to warn visitors of the dangers posed by that pathway.  *See* Opp'n at 8; Compl. ¶¶ 16, 22, 27.  The court considers each in turn.

**1.     Failure to Maintain**

As noted, the Forest Service Manual directs the Forest Service to "[i]nspect each public recreation site annually[.]"  FSM § 2332.1.  It also directs the Forest Service to "[m]aintain all improvements to the standard to which originally constructed or subsequently improved or modified."  FSM § 2332.5.  Defendant argues the Manual does not provide direction on the "scope of these inspections or the criteria to apply," Reply at 4, and "is silent on specifics as to when or how the Forest Service must endeavor to keep or repair any and all 'improvements' at or to their 'standard' state" and therefore, this mandate is discretionary, *id.* at 5.  Defendant cites to *Clark v. United States*, 234 F. Supp. 3d 1127 (D.N.M. 2014), for the proposition that the "FSM

9

1    does not require that recreation sites 'be maintained in any particular way.'" *Id.*  However, *Clark*

2    did not address the language in section 2332.5.  *See* 234 F. Supp. 3d at 1140–41.  Rather, the

3    court in that case considered the sections the plaintiff cited to, and found those provisions of the

4    Manual did not require the "snow play area be maintained in any particular way." *Id.*

5         Here, the Manual does provide how improvements must be maintained.  They must be

6    maintained "to the standard to which originally constructed or subsequently improved or

7    modified." FSM § 2332.5.  While the Forest Service may have discretion regarding how to carry

8    out its responsibility to annually inspect recreation sites and maintain improvements, "it does not

9    have discretion to abdicate its responsibility in this regard." *Whisnant*, 400 F.3d at 1185.  "When

10   it does so, the discretionary function exception cannot shield the government from FTCA liability

11   for its negligent conduct." *Id.*  Defendant has not shown it complied with the directive to conduct

12   annual inspections at the Silver Lake Boat Launch area and has not shown it maintained the

13   recreation site, including the wooden stairs and parking lot, to the standard to which they were

14   originally constructed.

15        Moreover, even if the court were to find defendant has shown the first step of the

16   discretionary function exception is met, defendant does not satisfy the second prong.  Although

17   defendant attempts to show multiple policy considerations were at issue, *see, e.g.*, Mem. at 19–25,

18   the Ninth Circuit repeatedly has held "'maintenance work is not the kind of regulatory activity' to

19   which the Supreme Court envisioned the discretionary function exception applying." *Bolt v.*

20   *United States*, 509 F.3d 1028, 1034 (9th Cir. 2007) (quoting *ARA Leisure Servs. v. United States*,

21   831 F.2d 193, 195 (9th Cir. 1987)) (clearing snow and ice from parking lot "a matter of routine

22   maintenance beyond the scope of the discretionary function exception"); *see, e.g.*, *O'Toole*, 295

23   F.3d at 1036 ("[A]n agency's decision to forego, for fiscal reasons, the routine maintenance of its

24   property—maintenance that would be expected of any other landowner—is not the kind of policy

25   decision that the discretionary function exception protects.").  Defendant's failure to maintain the

26   parking lot and the wooden stairs and trail area leading to the picnic table is a routine

27   maintenance decision – or lack of decision -- expected of any other private landowner.  To permit

28   the discretionary function exception to apply in circumstances such as this would "all but swallow

10

1   the Federal Tort Claims Act." *See ARA Leisure Servs*, 831 F.2d at 196 (finding government's

2   failure to maintain road fell in category of "ordinary garden-variety negligence" (citation and

3   marks omitted)); *Niva v. U.S. Bureau of Land Mgmt.*, 245 F. App'x 621, 623 (9th Cir. 2007)

4   (unpublished) (discretionary function exception inapplicable when Bureau of Land Management

5   failed to maintain road and repair ditch).  Accordingly, the discretionary function exception does

6   not apply to defendant's failure to maintain the site.

7                         **2.      Failure to Warn**

8          Second, regarding defendant's failure to warn visitors about the uneven pathway, the court

9   finds the first step of the discretion function exception is met.  Plaintiff argues the discretionary

10   function exception does not apply because the Manual prescribes the course of action Forest

11   Service employees must follow regarding safety hazards at recreation sites.  Opp'n at 5–6.  The

12   court has reviewed the relevant portions of the Manual and finds they use broad discretionary

13   language.  The Manual includes language such as "[t]o the extent practicable," "consider" and

14   "reasonable measures."  *See, e.g.*, §§ 2330.2, 2330.3, 2331.5, 2332.1.  The Manual acknowledges

15   the "inherent risks" present in National Forest System lands, and while the Manual directs

16   employees to "[i]mmediately correct high-priority hazards," it does not specify how to determine

17   whether a particular hazard is "high priority."  *Id.* § 2332.1.  Although the Manual includes some

18   mandatory language, "[t]he existence of some mandatory language does not eliminate discretion

19   when the broader goals sought to be achieved necessarily involve an element of discretion."

20   *Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998) (collecting cases).  A general duty to

21   promote safety is not sufficient to create clear duties that eliminate discretion.  *See Kennewick Irr.*

22   *Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir. 1989); *see also Valdez v. United States*, 56

23   F.3d 1177, 1180 (9th Cir. 1995) ("While the said policy guidelines certainly outline general

24   policy goals regarding visitor safety, the means by which NPS employees meet these goals

25   necessarily involves an exercise of discretion.").  Accordingly, the first step of the discretionary

26   function exception test is satisfied.  *See, e.g.*, *Tam v. United States*, 905 F. Supp. 2d 1221, 1230

27   (W.D. Wash. 2012) (similarly finding §§2332 and 2332.1 and other management and policy

28   documents did not "rise to the level of specific mandates directing a course of action").  At

hearing, plaintiff conceded there is no statute or regulation specifically mandating specific warnings.

Second, the court considers whether the challenged action involved a decision susceptible to social, economic or political policy analysis.  "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.  "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325.  However, the court remains cognizant that "[t]he danger that the discretionary function exception will swallow the FTCA is especially great where the government takes on the role of a private landowner." *O'Toole*, 295 F.3d at 1037.

Here, the nature of the Forest Service's action taken or its inaction is the failure to warn visitors of a safety hazard.  "In the usual case, the failure to warn involves only 'safety considerations under an established policy, rather than the balancing of competing policy considerations.'" *Lesoeur v. United States*, 21 F.3d 965, 970 (9th Cir. 1994) (citation omitted).  Thus, "a failure to warn falls within the discretionary function exception only if it implicates political or economic policy considerations[.]" *Id.*  In cases like this where defendant "has allegedly failed to warn, the use of the discretionary function exception must be limited to those unusual situations where the government was required to engage in broad, policy-making activities or to consider unique social, economic, and political circumstances in the course of making judgments related to safety." *Faber v. United States*, 56 F.3d 1122, 1125 (9th Cir. 1995).  "As has been noted by numerous courts, reconciling conflicting case law in this area can be difficult." *O'Toole*, 295 F.3d at 1035.  This is due to the inherently policy-specific and fact-driven nature of the inquiry.  *Terbush*, 516 F.3d at 1136.  "Government actions can be classified along a spectrum, ranging from those 'totally divorced from the sphere of policy analysis,' such as driving a car, to those 'fully grounded in regulatory policy,' such as the regulation and oversight of a bank." *Whisnant*, 400 F.3d at 1181 (quoting *O'Toole*, 295 F.3d at 1035).  Thus, the

question is whether the failure to warn in this case is more analogous to negligent driving or to decisions regarding the regulation of a bank.

The court finds the failure to warn in this case does not fall within the discretionary function exception.  This is not a case where plaintiff is challenging the way in which the Forest Service tried to mitigate a safety concern in light of other policy concerns.  *See, e.g.*, *Blackburn v. United States*, 100 F.3d 1426, 1434 (9th Cir. 1996) (National Park Service's decision to place warning signs "balanced competing policy considerations in determining how to warn the public of the hazard").  Nor is this a case where unique policy considerations, such as relations with a Federal Indian Tribe, are at stake.  *See, e.g.*, *Lesoeur*, 21 F.3d at 969 (National Park Service's "failure to warn that the Tribe's rafting tours were not regulated clearly implicated important political policy considerations" impacting relations between Tribe and the United States).  Rather, this case is closely analogous to *Young v. United States*, 769 F.3d 1047 (9th Cir. 2014).

The relevant facts in *Young* are as follows.  The National Park Service installed a transformer, which had generated heat and melted the snow above it to create a "large cavity" beneath a thin snow ceiling.  *Id.* at 1051.  As the plaintiff approached the area, the snow ceiling collapsed, and the plaintiff fell approximately twelve feet.  *Id.*  Whether the Park Service knew or should have known about the hazard created by the transformer was a disputed jurisdictional fact. *Id.* at 1052.  The plaintiff and her family filed a complaint against the United States for injuries the plaintiff suffered at the National Park.  *See generally id.*  The plaintiffs alleged the Park Service knew or should have known about the hazard and was negligent in failing to warn of the hazard it created.  *Id.* at 1054.  The district court, however, framed plaintiffs' allegations more broadly and concluded "the conduct at issue is the NPS's maintenance of the Park, decisions to identify and warn visitors from hazards, and the protection of visitors from hazards[.]"  *Id.*  Based on these allegations, the district court found the discretionary function exception applied.  *Id.*

On appeal, the Ninth Circuit found the district court mischaracterized plaintiffs' allegations and found the discretionary function exception did not apply.  *See id.* at 1054–58.  The Ninth Circuit determined the "decision not to warn of the latent dangers associated with the transformer near the [visitor center] was a decision 'totally divorced' from the policies that the

1    government has identified as the basis for its decision." *Id.* at 1057.  The Ninth Circuit had "little

2    doubt that NPS staff members make discretionary decisions every day about managing snow,

3    prioritizing inspections, and responding to hazards." *Id.* at 1058.  However, relying on the

4    plaintiffs' allegations, the court found those decisions were not at issue.  *Id.*  The court rejected

5    the government's argument that its decision not to put a warning sign next to the transformer

6    implicated "considerations of access, resource preservation, and conservation." *Id.* (citing other

7    failure to warn cases in which Circuit has found discretionary function exception does apply).

8    The Ninth Circuit found those policy considerations were irrelevant because the case was not

9    about "providing access to visitors in the face of known dangers," nor did it implicate matters of

10   historic or natural resource preservation as the hazard was not located in the wild, was created by

11   the agency, and the lack of warning had nothing to do with the protection of wildlife and the

12   environment.  *See id.*  In sum, the Ninth Circuit concluded in *Young* the "decision not to warn can

13   only be considered 'totally divorced' from the policies on which it purports to rely[.]"  *Id.*

14        Likewise, plaintiff's complaint alleges defendant created the dangerous conditions at

15   Silverlake Boat Launch, knew or should have known about the dangerous conditions, and failed

16   to warn visitors of the danger.  Compl. ¶¶ 13, 16, 22.  While a Forest Service staff member claims

17   not to know the origins of the wooden stairs, a picnic table was located in an area in which

18   visitors would have had to either use the stairs or use the uneven pathway next to the stairs, which

19   is what plaintiff did.  As in *Young*, defendant raises various policy considerations Forest Service

20   staff needed to consider.  For example, defendant argues Forest Service staff consider whether a

21   warning sign might detract from a site's "scenic integrity." Mem. at 19–25.  Moreover, defendant

22   contends decisions regarding where staff should look for potential hazards, how often staff should

23   look for such hazards, how to prioritize different recreational sites, how to prioritize different

24   types of safety concerns and how to mitigate the potential hazards all implicate policy

25   considerations including resource allocations, environmental impacts and staffing needs.  *See*

26   Reply at 9; Mem. at 19–25.

27        As in *Young*, the court does not doubt Forest Service staff make discretionary decisions

28   regarding how to prioritize different recreation sites, inspections, safety concerns and how to

14

respond to safety concerns.  *Cf. Childers v. United States*, 40 F.3d 973, 976 (9th Cir. 1994), *as amended* (Jan. 17, 1995) ("Park rangers use[] their discretion to balance, within the constraints of the resources available to them, a statutory mandate to provide access with the goal of public safety.").  However, plaintiff does not broadly challenge the way in which the Forest Service maintained the Inyo National Forest, its decisions regarding how to identify and warn visitors from hazards, and its decisions to protect visitors.  Rather, the issue here is narrower.  The question is whether Forest Service employees were negligent in failing to protect plaintiff from a hazard not naturally occurring in the wild—"a poorly maintained walkway which contained loose rocks and debris, uneven surfaces, and sharp ledges"—which the Forest Service knew or should have known about.  Compl. ¶ 12.  Placing a warning sign regarding the use of the stairs or pathway leading to the picnic table would not have implicated wilderness considerations and it would not have detracted from the "scenic integrity" of the location.  The dangerous condition was located next to an asphalt parking lot displaying signs of deferred maintenance and a picnic area at a popular lake.  Moreover, budgetary constraints alone are insufficient to escape liability under the discretionary function exception.  *See O'Toole*, 295 F.3d at 1037.

Although defendant need only show the nature of its actions is "susceptible to policy analysis," *Gaubert*, 499 U.S. at 325, "[it]t is not sufficient for the government merely to waive [sic] the flag of policy as a cover for anything and everything it does that is discretionary in nature." *Terbush*, 516 F.3d at 1134.  "Every slip and fall, every failure to warn, every inspection and maintenance decision can be couched in terms of policy choices based on allocation of limited resources." *O'Toole*, 295 F.3d at 1037.  Here, the court finds "there is no apparent connection between the agency's decision and the policies it identifies as the basis for that decision," and therefore finds the discretionary function exception does not apply.  *See Young*, 769 F.3d at 1059.  This is a "usual case" in which the failure to warn involves only safety considerations.  *See, e.g.*, *Faber*, 56 F.3d at 1125 ("It would be wrong to apply the discretionary function exception in a case where a low-level government employee made a judgment not to post a warning sign, or to erect a guardrail, or to make a safer path.").

15

1    The court finds defendant has not shown the discretionary function exception applies and

2    declines to grant its motion to dismiss or for summary judgment on this ground.

3    **IV.    IMMUNITY**

4        **A.    California Recreational Use Statute**

5        As noted, the FTCA provides a limited waiver of sovereign immunity.  However, the

6    United States has waived its sovereign immunity only to "the same extent as a private individual

7    under like circumstances[.]"  28 U.S.C. § 2674.  Thus, the United States may be liable for

8    damages "if a private person, would be liable to the claimant in accordance with the law of the

9    place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Because the injury occurred

10   in California, the court applies California law.  *See Conrad v. United States*, 447 F.3d 760, 767

11   (9th Cir. 2006) (under FTCA, courts apply "law of the state in which the alleged tort occurred").

12       In general, "[a] landowner owes a duty to exercise reasonable care to maintain his or her

13   property in such a manner as to avoid exposing others to an unreasonable risk of injury."  *Barnes*

14   *v. Black*, 71 Cal. App. 4th 1473, 1478 (1999).  "The failure to fulfill the duty is negligence."  *Id.*

15   However, landowners are protected "from liability for negligence to those who enter or use their

16   land for recreational purposes."  *Mattice By & Through Mattice v. U.S., Dep't of Interior*, 969

17   F.2d 818, 821 (9th Cir. 1992).  The relevant provision of the recreational use statute provides:

18   | An owner of any estate or any other interest in real property, whether
19   | possessory or nonpossessory, owes no duty of care to keep the
20   | premises safe for entry or use by others for any recreational purpose
21   | or to give any warning of hazardous conditions, uses of, structures,
22   | or activities on those premises to persons entering for a recreational
23   | purpose, except as provided in this section.

24   Cal. Civ. Code § 846(a).  "There are two elements as a precondition to immunity:

25   (1) the defendant must be the owner of an estate or any other interest in real property, whether

26   possessory or nonpossessory; and (2) the plaintiff's injury must result from the entry or use of the

27   premises for any recreational purpose."  *Gordon v. Havasu Palms, Inc.*, 93 Cal. App. 4th 244, 255

28   (2001) (citations, marks and alterations omitted).

16

1    Although immunity under section 846 is broad, it is "not absolute." *Hoffmann v. Young*,

2    13 Cal. 5th 1257, 1268 (2022).  There are three exceptions to recreational use immunity.  *See* Cal.

3    Civ. Code § 846(d).  The exception relevant to this case is when there is "[w]illful or malicious

4    failure to guard or warn against a dangerous condition, use, structure or activity."  *Id.* § 846(d)(1).

5    "A plaintiff seeking to rely on an exception to a general statutory rule bears the burden of

6    establishing the exception applies."  *Hoffmann*, 13 Cal. 5th at 1270.

7       **B.    Discussion**

8    As a preliminary matter, plaintiff's complaint alleges defendant's actions were negligent.

9    *See generally* Compl.  As stated above, plaintiff brings three claims: premise liability, negligence,

10   and negligent undertaking.  *Id.* ¶¶ 15–29.  Nowhere in the complaint does plaintiff use the word

11   "willful" or "malicious," or otherwise note any exception to the California recreational use

12   statute.  *See generally id.*  Defendant argues plaintiff cannot now attempt to prove an exception to

13   section 846 applies because plaintiff failed to allege an exception in his complaint.  *See* Mem. at

14   26–27.  Plaintiff does not address this argument, but rather requests the court grant leave to

15   amend to cure "any outstanding defects" if "the court is inclined to grant any portion of

16   Defendant's motion."  Opp'n at 14.  During hearing, defendant argued for the first time that

17   plaintiff's failure to allege the relevant exception to the recreational use statute is fatal because

18   under the Supreme Court's decision in *Brownback*, *supra*, plaintiff must plausibly allege the six

19   elements of an FTCA claim are met, one of which includes "the United States, if a private person,

20   would be liable to the claimant in accordance with the law of the place where the act or omission

21   occurred."  592 U.S. at 218 (quoting 28 U.S.C. § 1346).  In response, plaintiff argued he is not

22   required to plead in rebuttal to a potential affirmative defense.

23   Having now considered the question, the court agrees with plaintiff.  Courts in this circuit

24   and in California have found immunity under the California recreational use statute is an

25   affirmative defense.  *See, e.g.*, *Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1168 (2009);

26   *Hoffmann*, 13 Cal. 5th at 1264; *Bollinger v. United States*, No. 16-820, 2017 WL 1336964, at *3

27   (S.D. Cal. Jan. 13, 2017); *Mangiaracina v. BNSF Ry. Co.*, No. 16-05270, 2019 WL 1975461, at

28   *6 (N.D. Cal. Mar. 7, 2019); *cf. Neal v. Bently Nev. Corp.*, 5 F.3d 538 (9th Cir. 1993) (table)

17

(recognizing immunity under Nevada's Recreational Use Statute as affirmative defense). Plaintiff is not required to anticipate an affirmative defense in his complaint and plead prospectively in response. *See Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 n.9 (2017) ("In civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading."); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (finding similarly); *see also Nusbaum v. Cent. Valley Concrete, Inc.*, No. 08-0863, 2022 WL 289334, at *12 (Cal. Ct. App. Feb. 1, 2022) (unpublished)[5] (rejecting argument that plaintiff must assert a claim for willful misconduct "to raise the applicability of the willful misconduct exception to the section 846 immunity"). Because defendant asserts section 846 immunity as an affirmative defense, *see* First Am. Answer, ECF No. 39, it is defendant who ultimately bears the burden of showing it can meet the elements of that defense, *see Mangiaracina*, 2019 WL 1975461, at *6. Accordingly, plaintiff did not need to allege an exception to California's recreational use statute in his complaint. The court thus considers whether the exception to California's recreation use statute applies on the merits.

The parties agree the preconditions of section 846 are met, i.e., that 1) defendant is the owner of the real property at issue and 2) plaintiff entered or used the premise for a recreational purpose. *See* Mem. at 26; Opp'n at 10. The parties, however, dispute whether the willfulness exception to the recreational use statute applies such that defendant can prevail on a motion for summary judgment. "The meaning assigned to wilful [sic] misconduct by the California courts is any intentional act of an unreasonable character undertaken in disregard of a known risk or a risk so obvious that the actor must be taken to have been aware of it, and so great as to make resulting harm highly probable." *Spires v. United States*, 805 F.2d 832, 834 (9th Cir. 1986) (citation omitted). To determine whether a landowner's actions are willful and malicious, the court considers the following "essential elements": "(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a

---

[5] Although the California Rules of Court would prohibit the citation of this unpublished decision in a state court, those rules do not apply in federal courts, which may review and consider unpublished appellate decisions for their persuasive (but not precedential) value. *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997).

1   possible, result of the danger, and (3) conscious failure to act to avoid the peril." *Termini v.*

2   *United States*, 963 F.2d 1264, 1267 (9th Cir. 1992) (citations omitted).  "[W]illful misconduct

3   does not invariably entail a subjective intent to injure." *Manuel v. Pac. Gas & Elec. Co.*, 173 Cal.

4   App. 4th 927, 940 (2009).  Rather, "[i]t is sufficient that a reasonable person under the same or

5   similar circumstances would be aware of the highly dangerous character of his or her conduct."

6   *Id.* (citations omitted).

7         The court finds there is a dispute of fact regarding whether the Forest Service had actual

8   or constructive knowledge of the peril here.  "Constructive knowledge is measured by an

9   objective standard: 'whether a reasonable man under the same or similar circumstances as those

10  faced by the actor would be aware of the dangerous character of his conduct.'"  *Rost v. United*

11  *States*, 803 F.2d 448, 451 (9th Cir. 1986) (quoting *Chappell v. Palmer*, 236 Cal.App.2d 34, 37

12  (1965)).  Although Forest Service staff claims not to know where the wooden stairs came from,

13  visitors would have had to either use the stairs or use the uneven path next to the stairs to get to a

14  picnic table and the lake located nearby.  And in 2016, prior to the incident, the Forest Service

15  was aware that Silver Lake Boat Facility was in "poor condition" with "many cracks" in the

16  existing parking area, *see* Project Grant Agreement at 92, and failure to repair Silver Lake Boat

17  Launching Facility would "result in operation under a state of disrepair [and] possible closure due

18  to unsafe infrastructure," *id.* at 105.  The Forest Service Manual also directs staff to "[i]nspect

19  each public recreational site annually," FSM ¶ 2332.1, and "conduct periodic risk assessments as

20  necessary to identify hazards," *id.* FSM ¶ 2332.11.  Rec Techs are directed to prioritize

21  "imminent and significant  hazards" in the areas intensively used by visitors, such as picnic areas.

22  Mot. Reif Decl. ¶¶ 29–30.  Given these factors, there is a genuine dispute of fact whether a

23  reasonable person or entity in the Forest Service's circumstances would know of the unsafe

24  conditions in the parking lot and area where plaintiff was injured.  *See Rost*, 803 F.2d at 451 ("It

25  is enough that [defendant] knows or has reason to know of the circumstances which would bring

26  home to the realization of the ordinary, reasonable man the highly dangerous character of his

27  conduct.").

1    The court also finds there is a dispute of fact regarding whether defendant had actual or

2    constructive knowledge that injury was probable as opposed to possible.  Whether a defendant

3    "had actual or constructive knowledge that injury was a probable, as opposed to a possible, result

4    of the danger is to be determined 'by all of the circumstances.'"  *Manuel*, 173 Cal. App. 4th at

5    946 (quoting *Lostritto v. S. Pac. Transp. Co.*, 73 Cal. App. 3d 737, 745 (Ct. App. 1977)).  These

6    circumstances include whether there were prior accidents, whether the defendant had knowledge

7    of recreational activity at the location, the location of the property, ease of access to the danger,

8    and maintenance in a way that misleads the public.  *See id.* (collecting cases).

9    Defendant has shown there is no evidence of prior accidents at Silver Lake Boat Launch,

10   *see, e.g.*, Mot. Casey Decl. ¶¶ 4–5; Mot. Reif Decl. ¶¶ 32–35; Mot. Mason Decl. ¶¶ 3–6; Mot.

11   Gamino Decl. ¶¶ 24–28, there is no evidence of complaints regarding the stairs or the area where

12   plaintiff was injured, Gamino Decl. ¶ 24; Gamino Dep. 90:20–91:16, and plaintiff testified he

13   knew the stairs had not been maintained and might be a hazard, Schell Dep. 109:20–21.

14   Defendant also argues that even if the Forest Service "had been aware of the specific conditions

15   leading to Plaintiff's fall, nothing about them was so 'highly dangerous' as to render his freak

16   accident 'highly probable.'"  Mem. at 29.

17   Plaintiff does not directly counter defendant's evidence or arguments.  However, plaintiff

18   argues "[i]t is undisputed Defendant knew members of the public went to the Boat Launch

19   Facility for recreational purposes like fishing, kayaking, and hiking."  Opp'n at 12 (citing Project

20   Grant Agreement).  He argues "the danger was itself a walkway open to the public with poorly

21   maintained wooden steps and a caved-in asphalt landing requiring users to walk up the dirt on the

22   side of the steps and onto an exposed geo-textile fabric" and speculates "[d]efendant likely built

23   wooden steps to facilitate access to the lake because it knew the path was frequently used."  *Id.*

24   The court considers the following circumstances in finding there is a dispute of material

25   fact regarding whether defendant had actual or constructive knowledge that injury was probable

26   as opposed to possible.  First, while the government cites to the lack of prior accidents and formal

27   complaints, the lack of prior accidents is not dispositive.  *See Robertson v. United States*, No. 13-

28   2425, 2015 WL 12532461, at *11 (S.D. Cal. June 3, 2015) (finding "government's argument that

it was not aware of any prior incidents concerning the wire fence is not compelling").  California courts have frequently rejected finding a lack of constructive knowledge based solely on the absence of prior accidents, because "the matter of probability is not to be assessed solely by the number of prior accidents, which adventitiously may have been few, but by all the circumstances." *Termini*, 963 F.2d at 1269 (citations omitted).  Second, plaintiff has shown visitors frequented the area and the stairs were not in an isolated area, but rather, near a parking lot and a picnic table, which invited visitors to come to the hazardous area. *Cf. Manuel*, 173 Cal. App. 4th at 946 (finding nothing to show injury "probable" because "there was no evidence of prior incidents of any kind.  No accidents.  No prior climbers.  And no evidence that anyone frequented the area.  Moreover, . . . the tower was apparently in an isolated area.").  In fact, the Forest Service knew the lake is popular and that the parking area had many cracks and safety issues. *See* Project Grant Agreement at 92, 105.  Third, the Forest Service's failure to maintain the stairs, pathway and parking lot in compliance with the Manual is also a factor in determining whether defendant had constructive knowledge that injury was probable. *See Robertson*, 2015 WL 12532461, at *12 (noting "Ninth Circuit has held that the government's failure to observe its own safety standards is an important factor in determining that it possessed constructive knowledge that injury is probable"; collecting cases).  As noted, the Manual directs the Forest Service to "[m]aintain all improvements to the standard to which originally constructed or subsequently improved or modified." FSM § 2332.5.  Finally, while plaintiff may have been aware of the unsafe condition of the stairs, plaintiff provides evidence showing the danger may not have been so obvious. *See* Solomon Dep. 104:3–15, 104:23–105:5, Frueh Decl. Ex. 13, ECF No. 73-21 (plaintiff's expert testifying slipperiness of the black tarp, which plaintiff tripped on, was latent risk and not open and obvious).  Moreover, there is no requirement that a peril be "hidden" for conduct to be willful or malicious. *See, e.g.*, *Singh v. United States*, 718 F. Supp. 2d 1139, 1149 (N.D. Cal. 2010); *Lashley v. United States*, No. 05-03288, 2006 WL 2788243, at *8 (N.D. Cal. Sept. 26, 2006) ("It cannot be that a landowner is immune from liability when he or she has made a conscious decision not to warn of a danger, even if that danger is not completely hidden."); *but see Coryell v. United States*, 855 F. Supp. 1120, 1123 (C.D. Cal. 1994) (no willful

1  conduct because lack of prior accident and peril was open and obvious).  Having considered all

2  the circumstances, plaintiff has shown a trier of fact could find defendant knew an injury was

3  probable as opposed to only possible.

4       Lastly, viewing the evidence in the light most favorable to plaintiff, there is a dispute of

5  fact regarding whether the Forest Service consciously failed to act to avoid the peril.  "Although

6  there is no precise test defining what constitutes a 'conscious failure to act,' cases indicate that a

7  defendant will avoid liability under section 846 where he takes *some* measures to avoid harm,

8  even where more effective measures could or should have been taken."  *Buchwald v. Metro.*

9  *Transp. Comm'n*, No. 04-01833, 2005 WL 2000931, at *8 (N.D. Cal. Aug. 16, 2005) (emphasis

10  in original) (collecting cases).  Here, plaintiff has shown defendant took no action.  Defendant did

11  not close the site or place any kind of warning or take any types of action to avoid the risk of

12  harm.  The lack of any sort of warning or effort to inform visitors of the risks at the site raises a

13  dispute of fact regarding whether defendant consciously failed to act.  *See, e.g.*, *Esteban v. United*

14  *States*, No. 13-2025, 2015 WL 5093786, at *7 (S.D. Cal. Aug. 27, 2015) ("The fact that the

15  condition of the broken electrical junction box was left to exist in a very populated area, without

16  any warning or protections, creates a genuine issue of material fact as to whether the government

17  consciously failed to act to avoid the peril."); *Monzon v. S. California Reg'l R.R. Auth.*, No.

18  B231921, 2012 WL 837097, at *8 (Cal. Ct. App. Mar. 14, 2012) (unpublished) [6] (noting "no

19  evidence [defendant] made any other effort to inform hikers, or the public in general" about the

20  danger); *cf. Alvarez v. United States*, No. 21-09377, 2023 WL 6192710, at *8 (C.D. Cal. Aug. 9,

21  2023) (no conscious failure to act where government provided some warning).

22       Further, defendant knew the site was in disrepair.  Under the Manual, it was required to

23  prioritize public safety, inspect recreational sites annually, conduct periodic risk assessments,

24  identify hazards, immediately correct high-priority hazards, maintain all improvements to the

25  standard to which the improvement was originally constructed or subsequently improved or

26  modified, and schedule light maintenance.  *See* FSM §§ 2330.2, 2330.3, 2331.5, 2332, 2332.1,

27  2332.11, 2332.5.  However, there is no evidence or record defendant annually inspected Silver

---

[6] *See supra* note 6.

Lake Boat Launch or took steps to identify hazards.  Plaintiff has shown defendant did not maintain the improvements in the site.  And while defendant was working with the State of California to update and rehabilitate the site, the project completion date was delayed by four years and defendant did nothing in the interim to protect against injury.  *See* Project Grant Agreement at 34 ("The Government shall complete the Project no later than March 1, 2017); Reply Gamino Decl. Ex. 16 (showing deadline extended to February 1, 2023).  Here, defendant's apparent disregard of the Manual raises a dispute of fact whether defendant consciously failed to act.  *See, e.g.*, *Niva*, 245 F. App'x at 622 (noting Bureau of Land Management's disregard of "erosion control recommendations and its duty to maintain [the Clear Creek Road]"); *Novikoff v. United States*, No. 11-03023, 2016 WL 636880, at *5 (E.D. Cal. Feb. 18, 2016) (finding conscious failure to act where defendant did not comply with Reclamation Manual which "required inspections and reasonably possible corrective action to safeguard the public from known hazards").  Having considered all the evidence in the light most favorable to plaintiff as required, the court finds there is a triable issue of fact regarding whether defendant consciously failed to act.

Because plaintiff has shown there is a triable issue of fact whether the willfulness exception to the California recreational use statute applies, the court denies the motion for summary judgment on this ground.  *See Simpson v. United States*, 652 F.2d 831, 834 (9th Cir. 1981), *abrogated on other grounds by Ravell v. United States*, 22 F.3d 960 (9th Cir. 1994) (citing *Gard v. United States*, 594 F.2d 1230, 1234 n.2 (9th Cir. 1979) ("When willfulness is an issue, summary judgment should be granted with caution[.]").

## V.   CONCLUSION

For the reasons above, the defendant's motion is **denied.**  In light of the expiration of the dispositive motion deadline, **a final pretrial conference for a trial for the liability phase is set for October 4, at 10:00 a.m. in Courtroom 3 (KJM) before Chief District Judge Kimberly J. Mueller.**  *See* E.D. Cal. L.R. 282.  The parties shall meet and confer and file a joint pretrial statement no later than **three weeks prior** to the **final pretrial conference**.

23

1      The provisions of Local Rule 281 shall apply with respect to the matters to be included in

2  the joint pretrial statement.  At least one of the attorneys who will conduct the trial for each of the

3  parties shall attend the final pretrial conference.  All motions in limine must be filed in

4  conjunction with the joint pretrial statement.  In most cases, motions in limine are addressed and

5  resolved on the morning of the first day of trial.  The parties may alert the court at the final

6  pretrial conference and in their final joint pretrial statement that a particular motion or motions

7  should be resolved earlier.  At the final pretrial conference, the court will set a briefing and

8  hearing schedule on the motions in limine as necessary.  The parties are reminded that a motion in

9  limine is a pretrial procedural device designed to address the admissibility of evidence.  The court

10  looks with disfavor upon dispositional motions presented at the final pretrial conference or at trial

11  in the guise of motions in limine.

12      In the meantime, if the parties jointly agree to referral to a court-convened settlement

13  conference with another judge of the court, they may file such request in writing.

14      This order resolves ECF No. 73.

15      IT IS SO ORDERED.

16  DATED:  August 29, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE